RECORD NO. 09-4505

*In The*

# United States Court Of Appeals

### For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

# KENNETH WAYNE TOLBERT,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT ASHEVILLE

_____

## REPLY BRIEF OF APPELLANT

_____

Claire J. Rauscher
**Executive Director**
**FEDERAL DEFENDERS OF**
  **WESTERN NORTH CAROLINA, INC.**

**Ann L. Hester**
*Counsel of Record*
**Steven Slawinski**
*Assistant Federal Defender*
**Erin K. Taylor**
*Research and Writing Attorney*
**129 West Trade Street**
**Suite 300**
**Charlotte, North Carolina  28202**
**(704) 374-0720**

*Counsel for Appellant*

**RECORD NO. 09-4505**

RECORD NO. 09-4505

In The

# United States Court Of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## KENNETH WAYNE TOLBERT,

*Defendant – Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT ASHEVILLE

_____

### REPLY BRIEF OF APPELLANT
_____

Claire J. Rauscher
Executive Director
FEDERAL DEFENDERS OF
  WESTERN NORTH CAROLINA, INC.

Ann L. Hester
*Counsel of Record*
Steven Slawinski
*Assistant Federal Defender*
Erin K. Taylor
*Research and Writing Attorney*
129 West Trade Street
Suite 300
Charlotte, North Carolina  28202
(704) 374-0720

*Counsel for Appellant*

**RECORD NO. 09-4505**

# <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    A defendant's right to counsel in supervised release revocation hearings is cognizable under the Fifth Amendment's Due Process Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Even if Tolbert's right to counsel were merely statutory, the record does not demonstrate the requisite "knowing and voluntary" waiver of his right to counsel. . . . . . . . . . . . . . . . . . . . . 4

    III.    The district court's sentence was plainly, procedurally unreasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Gagnon v. Scarpelli*,
　　411 U.S. 778 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Mempa v. Rhay,*
　　389 U.S. 128 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Morrissey v. Brewer,*
　　408 U.S. 471 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*United States v. Crudup*,
　　461 F.3d 433 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Hodges*,
　　460 F.3d 646 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*United States v. Moreland*,
　　437 F.3d 424 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Promise*,
　　255 F.3d 150 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Constitutional Provision:**

U.S. Const. Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S. Const. Amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Rule:**

Fed. R. Crim. P. 32.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5

## **INTRODUCTION**

Without engaging in any colloquy with Kenneth Tolbert to determine whether he understood the punishment he faced or the pitfalls of self-representation, the district court allowed Tolbert to fire his counsel and proceed *pro se* with an ill-advised defense strategy that in all likelihood resulted in the court's giving Tolbert, a first-time offender with limited court experience, a longer sentence than he would have received if he had continued with counsel representing him. The totality of the circumstances in Tolbert's case do not demonstrate that Tolbert's waiver of his right to counsel was knowing and voluntary.

Furthermore, the government acknowledges that a court, upon revocation of supervised release, is required to begin sentencing with an accurate calculation of the applicable guideline sentencing range. Here, the district court sentenced Tolbert without finding or considering the policy statement guideline sentencing range, an error which renders Tolbert's sentence plainly, procedurally unreasonable.

1

## ARGUMENT

**I.    A defendant's right to counsel in supervised release revocation hearings is cognizable under the Fifth Amendment's Due Process Clause.**

The government asserts that the rights outlined in Federal Rule of Criminal Procedure 32.1 are "not of Constitutional dimension." G. Br. at 12. But the government's argument fails to acknowledge Supreme Court precedent holding that the Constitution extends due process rights, including the right to counsel in some circumstances, to defendants in revocation proceedings. The due process rights in supervised release revocation proceedings codified in Rule 32.1 are firmly rooted in a trilogy of Supreme Court cases addressing the scope of constitutional protection in probation and parole revocation contexts. *See Mempa v. Rhay,* 389 U.S. 128 (1967) (holding that a defendant-probationer had a Sixth Amendment right to counsel at a combined revocation and sentencing hearing)*; Morrissey v. Brewer,* 408 U.S. 471 (1972) (holding that due process requires a preliminary hearing and final revocation hearing for a person facing parole revocation); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (recognizing a due process right to counsel for indigent defendants in revocation hearings).

With respect to the right to counsel, in *Gagnon*, the Supreme Court tackled the question of whether an indigent probationer or parolee has a due process right

to be represented by counsel at revocation hearings. *Gagnon,* 411 U.S. at 783. The Court recognized that the due process rights required by *Morrissey* would not be effective, in some cases, without the assistance of counsel. *Id.* at 786. The Court established a presumption that counsel should be provided in probation or parole revocation cases where the defendant makes a colorable claim that he has not committed the alleged violation of the conditions of supervision or where, even when the violation is uncontested, there are mitigating circumstances that are difficult to present and that make revocation inappropriate. *Id.* at 790.

In recognizing the importance of counsel in some revocation proceedings, the Supreme Court requires that a court not refuse to provide counsel without first ensuring that a defendant would not be prejudiced by such a decision. Specifically, whether a defendant appears to be capable of speaking effectively for himself should be considered. *Id.* at 790-91. And "in every case in which counsel is refused, the grounds for refusal should be stated succinctly in the record." *Id.* at 791. The government's attempt to minimize the importance of a defendant's right to counsel in revocation proceedings is misplaced. The Supreme Court made it clear that a defendant's right to counsel is among the constitutional protections that should be afforded defendants in revocation proceedings.

3

**II.    Even if Tolbert's right to counsel were merely statutory, the record does not demonstrate the requisite "knowing and voluntary" waiver of his right to counsel.**

The government argues that a district court accepting a waiver of counsel at a supervised release revocation hearing does not need to engage in a "rigid or specific inquiry." G. Br. at 12.   But the government acknowledges that, even for a waiver of a statutory right to counsel, the waiver must be knowing and voluntary. *Id.*

In arguing that Tolbert's waiver was knowing and voluntary, the government relies on *United States v. Hodges*, where the Fifth Circuit held that a waiver of a defendant's Rule 32.1 right to counsel "is knowing and voluntary (1) where there is sufficient colloquy by the district court to assure an understanding or freely made waiver; or (2) where the colloquy leaves some uncertainty, the totality of the circumstances assures that the waiver is knowing and voluntary." 460 F.3d 646, 652 (5th Cir. 2006).

Using this analytical framework, the court in *Hodges* found that the district court's colloquy, which included informing the defendant of his legal and procedural rights and suggesting that the defendant would be better off represented by counsel, was not sufficient to establish a knowing and voluntary

4

waiver. *Id.* The court then turned to a "totality of the circumstances" analysis and ultimately determined that the defendant's waiver was knowing and voluntary. *Id*.

In making that determination, the *Hodges* court took the following facts into consideration: first, the defendant was aware of the nature of the charges against him and the penalty he faced; second, the defendant had been warned, before and during the hearing, that self-representation was not in his best interests; third, the defendant was familiar with the criminal process or the rights and procedures surrounding revocation, and the court also had reminded the defendant of his rights relating to the proceedings; fourth, stand-by counsel was present; and finally, there was no evidence of coercion, gamesmanship, or improper forces at play in defendant's decision to represent himself. *Id.* at 653. *Hodges* demonstrates that, even though the court's review of a defendant's waiver of Rule 32.1 right to counsel at a supervised release revocation hearing may be more relaxed than when a defendant waives counsel at trial, the record nevertheless must demonstrate that the defendant made a voluntary and informed choice.

With respect to the first step of the inquiry outlined in *Hodges*, the government cannot point to anything in the record that suggests that the district court engaged in *any* inquiry with Tolbert to determine if his waiver of counsel was knowing and voluntary. The district court engaged in no inquiry at all.

5

Instead, once Tolbert stated that he wanted to fire his attorney and exercise his right to allocution, the district court immediately discharged counsel. (JA 46-47).

Thus, under *Hodges*, Tolbert's waiver of counsel was valid only if "the totality of the circumstances assures that the waiver is knowing and voluntary." 460 F.3d at 652. The government argues that Tolbert's statement that he wanted to exercise his right to allocution is evidence that he was familiar with his legal rights and that this statement, coupled with the previous assistance of counsel in examining a witness and the presence of stand-by counsel, were sufficient circumstances to demonstrate that Tolbert's waiver was knowing and voluntary. G. Br. at 14-15. But other circumstances demonstrate that, under the totality of the circumstances, Tolbert's waiver was *not* voluntary and knowing.

First, the district court failed to conduct any inquiry into Tolbert's request to waive his right to counsel. Instead, the court immediately excused counsel without informing Tolbert of either the maximum punishment he could receive or the recommended sentence under the Chapter 7 policy statements. (JA 41).

Second, Tolbert had almost no experience with the court system. When Tolbert pled guilty to the underlying federal offense, he had no criminal history. (JA 66). This was also Tolbert's first revocation hearing. And while Tolbert requested "allocution," it is clear from the record that he did not fully understand

6

the meaning of that term.   While a defendant has a right to allocute before the court pronounces sentence, when Tolbert made his request for allocution, he had not even put on any evidence in his defense, nor had the judge even found that he violated the terms of his supervised release. (JA 46).  Rather than demonstrating Tolbert's familiarity with the legal system, Tolbert's request for "allocution" demonstrates that he *did not* understand the procedures surrounding revocation.

Third, the court never warned Tolbert of the pitfalls of self-representation—pitfalls which became apparent once counsel was withdrawn and Tolbert proceeded with a nonsensical defense strategy that frustrated and irritated the court.  And finally, when Tolbert's inability to effectively represent himself became apparent, the court nevertheless allowed Tolbert to continue without the assistance of counsel.  (JA 51).  Rather than asking counsel to step in, the court pronounced judgment while Tolbert was still addressing the court.  (JA 51-52). All in all, the facts surrounding Tolbert's waiver demonstrate that it was not knowing and voluntary.

What is more, the record demonstrates that Tolbert's ill-advised decision to proceed without counsel likely contributed to the district court's decision to impose a sentence well in excess of the Chapter 7 policy statement range.   The court noted that Tolbert "presented no sensible response to the charges," and

7

Tolbert repeatedly told the court that he did not understand what was being asked by the court, although it appears from the exchange that this was part of Tolbert's strategy in representing himself.  (JA 49-50).  The exchanges between the court and Tolbert led to the court's becoming increasingly frustrated, with the court telling Tolbert, "we don't play games in this Court," and asking him, "Do you want to stay in here while I pronounce judgment?"  (JA 51).  The court then imposed a sentence of 18 months' imprisonment, without even mentioning  the 3-to-9-month policy statement range applicable to Tolbert's violations.  (JA 53).  No doubt, the court's sentence was heavily influenced by the court's frustration with Tolbert's defense strategy.

Had the court informed Tolbert of the possible consequences of self-representation, Tolbert likely would not have proceeded without counsel, as evidenced by Tolbert's post-hearing decision to have counsel represent him on appeal.   And, in all likelihood, had counsel continued representing Tolbert at the hearing, thereby avoiding Tolbert's inflammatory courtroom strategy, the court would not have sentenced Tolbert to 18 months' imprisonment.

## III.    The district court's sentence was plainly, procedurally unreasonable.

The government acknowledges that in *United States v. Crudup*, this Court held that, in supervised release, a district court must "begin by properly calculating

8

the advisory guidelines range." G. Br. at 20 (citing *United States v. Crudup*, 461

F.3d 433, 438-439 (4th Cir. 2006); *United States v. Moreland*, 437 F.3d 424, 432

(4th Cir. 2006)).  And the government concedes that the district court in this case

failed to calculate the range of imprisonment recommended in the Chapter 7 policy

statements.  G. Br. at 19.  In fact, the district court did not mention the applicable

guidelines range at all.  The district court's failure to begin Tolbert's sentencing

by calculating the applicable guidelines range is undeniable error rendering his

sentence procedurally unreasonable.

Furthermore, the sentence is "plainly unreasonable" under the *Crudup*

standard of review.  As Tolbert argued in his opening brief, in *United States v.*

*Promise*, this Court held that "an error is clear or obvious when settled law of the

Supreme Court or this Circuit establishes that an error has occurred." 255 F.3d

150, 160 (4th Cir. 2001).  At the time of Tolbert's revocation sentence, this

Circuit's settled law, as stated in *Crudup* and *Moreland* and conceded by the

government, required that judges begin sentencing by properly calculating the

applicable advisory guidelines range.  *Moreland,* 437 F.3d at 432; *Crudup*, 461

F.3d at 439.  Here, the district court's failure to calculate or consider the Chapter 7

policy statement guidelines was obvious and resulted in a procedurally defective,

"plainly unreasonable" sentence.  Consequently, Tolbert's sentence must be vacated.

## CONCLUSION

For the reasons stated in this Brief and in Tolbert's Opening Brief, this Court should vacate the judgment finding Tolbert guilty of violating the terms of supervised release or, in the alternative, should vacate Tolbert's sentence of 18 months' imprisonment and remand his case to the district court for resentencing.

This, the 21st day of January, 2010.


Claire J. Rauscher, Executive Director
Federal Defenders of
Western North Carolina, Inc.

/s Ann L. Hester
*Ann L. Hester
Steven Slawinski
Assistant Federal Defenders
Erin K. Taylor
Research and Writing Attorney
129 W. Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720
Counsel for Appellant Tolbert
*Counsel of Record

10

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>1,972</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>14 Point Times New Roman</u> in <u>WordPerfect 12</u>.

<u> /s/ Ann L. Hester   </u>
Counsel for Appellant
Dated: January 21, 2010

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 21, 2010, I electronically filed the foregoing

brief with the Clerk of Court using the CM/ECF System, which will send notice of

such filing to the following registered CM/ECF user:

Amy E. Ray
OFFICE OF THE U.S. ATTORNEY
United States Courthouse
100 Otis Street, Room 233
Asheville, NC  28801
(828) 271-4661

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

 /s/ Carly A. Ramey
Carly A. Ramey
Gibson Moore Appellate Services, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219